## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SYNKLOUD TECHNOLOGIES, LLC,  )
                                            )

                Plaintiff,  )

      v.  )     C.A. No. 19-1360-RGA

HP INC.,  )

                Defendant.  )

## DEFENDANT HP INC.'S OPENING BRIEF IN SUPPORT OF ITS
## MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT
## UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

                                 Kelly E. Farnan (#4395)
                                 Farnan@rlf.com
                                 Travis S. Hunter (#5350)

OF COUNSEL:                    Hunter@rlf.com

Richard A. Cederoth            RICHARDS, LAYTON & FINGER, P.A.
SIDLEY AUSTIN LLP            920 N. King Street
One South Dearborn             Wilmington, DE 19801
Chicago, IL 60603              302-651-7700
(312) 853-7000

Ching-Lee Fukuda             *Counsel for Defendant HP Inc.*
Ketan V. Patel
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
(212) 839-5300

Dated: December 6, 2019

# Table of Contents

**Page**

I.  INTRODUCTION ...................................................................................................................1

II.  NATURE AND STAGE OF PROCEEDINGS ...................................................................2

III.  SUMMARY OF THE ARGUMENT .................................................................................2

IV.  STATEMENT OF FACTS ..................................................................................................3

    A.  The '526 Patent ...........................................................................................................3

    B.  The '254 Patent ...........................................................................................................5

    C.  The '590 Patent ...........................................................................................................7

    D.  The '225 Patent .........................................................................................................10

V.  LEGAL STANDARDS ......................................................................................................12

    A.  Rule 12(b)(6) Motions to Dismiss for Failure to State a Claim...........................12

    B.  Patent-Eligibility Under 35 U.S.C. §101 .............................................................12

VI.  ARGUMENT .....................................................................................................................14

    A.  Alice Step One: The Claims At Issue Are Directed to Abstract Ideas .................14

    B.  Alice Step Two: The Claims Lack an Inventive Concept.....................................22

    C.  SynKloud's Claims are Unduly Preemptive .........................................................29

VII.  CONCLUSION..................................................................................................................30

RLF1 22554996v.1

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
    788 F.3d 1371 (Fed. Cir. 2015)...................................................................................14, 29

*Automated Tracking Solns, LLC v. Coca-Cola Co.*,
    723 F. App'x 989 (Fed. Cir. 2018) ...............................................................................13, 22

*Bancorp. Servs. v. Sun Life Assurance Co. of Canada*,
    687 F.3d 1266 (Fed. Cir. 2012)...........................................................................................13

*BASCOM Global Internet Servs. v. AT&T Mobility LLC*,
    827 F.3d 1341 (Fed. Cir. 2016)...........................................................................................29

*Bilski v. Kappas*,
    561 U.S. 593 (2010)............................................................................................................12

*Broadsoft, Inc. v. Callwave Commc'ns, LLC*,
    282 F. Supp. 3d 771 (D. Del. Oct. 1, 2017) ................................................................ *passim*

*buySAFE, Inc. v. Google, Inc.*,
    765 F.3d 1350 (Fed. Cir. 2014)....................................................................................24, 25

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
    859 F.3d 1352 (Fed. Cir. 2017)...........................................................................................12

*Content Extraction and Transmission LLC v. Wells Fargo Bank*,
    776 F.3d 1343 (Fed. Cir. 2014)..................................................................................4, 12, 19

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014)...........................................................................................17

*Dealertrack, Inc. v. Huber*,
    674 F.3d 1315 (Fed. Cir. 2012)...........................................................................................12

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016)....................................................................................14, 26

*FairWarning IP, LLC v. Iatric Systems, Inc.*,
    839 F.3d 1089 (Fed. Cir. 2016)...........................................................................................15

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
    792 F.3d 1363 (Fed. Cir. 2015)..................................................................................17, 19, 23

RLF1 22554996v.1

*Intellectual Ventures I LLC v. Erie Indem. Co.*,
    850 F.3d 1315 (Fed. Cir. 2017)..................................................................15, 18, 24, 25

*Intellectual Ventures I LLC v. Symantec Corp.*,
    234 F. Supp. 3d 601 (D. Del. 2017) (Fed. Cir. 2018)..................................21, 24, 28

*Interval Licensing LLC v. AOL, Inc.*,
    No. 2016-2502, 2018 WL 3485608 (Fed. Cir. Jul. 20, 2018)...........................19, 25

*IpLearn, LLC v. K12 Inc.*,
    76 F. Supp. 3d 525 (D. Del. 2014)................................................................24, 27

*OpenTV, Inc. v. Apple, Inc.*,
    No. 14-cv-01622, 2015 WL 1535328 (N.D. Cal. Apr. 6, 2015)...........................23

*Pres. Wellness Techs. LLC v. Allscripts Healthcare Sols.*,
    No. 2:15-CV-1559-WCB, 2016 WL 2742379 (E.D. Tex. May 10, 2016), *aff'd
    sub nom. Pres. Wellness Techs. LLC v. Allscripts Healthcare Sols. Inc.*, 684 F.
    App'x 970 (Fed. Cir. 2017) .............................................................................15

*In re Roslin Inst. (Edinburgh)*,
    750 F.3d 1333 (Fed. Cir. 2014)........................................................................12

*SAP Am., Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018).........................................................................12

*Sound View Innovations, LLC v. Facebook, Inc.*,
    204 F. Supp. 3d 655 (D. Del. 2016)..................................................................23

*In re TLI Commc'ns LLC Patent Lit.*,
    823 F.3d 607 (Fed. Cir. 2016).................................................................13, 17, 25

*TS Patents LLC v. Yahoo! Inc.*,
    279 F. Supp. 3d 968 (N.D. Cal. 2017) ...............................................................24

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017).........................................................................12

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014)..............................................................12, 14, 24, 25

*Uniloc USA, Inc. v. AVG Technologies USA, Inc.*,
    C.A. No. 2:16-cv-00393-RWS, 2017 WL 1154927 (E.D. Tex. Mar. 28, 2017) ...................28

*University of Fla. Research Found., Inc. v. Gen. Elec. Co.*,
    916 F.3d 1363 (Fed. Cir. 2019)...............................................................12, 15, 22

RLF1 22554996v.1

**Statutes**

35 U.S.C. §101 ................................................................................................................. *passim*

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ................................................................2, 12

RLF1 22554996v.1

# I.     INTRODUCTION

Claim 1 of U.S. Patent 9,098,526 ("the '526 patent," D.I. 15, Ex. 1), claim 1 of U.S. Patent 10,015,254 ("the '254 patent," D.I. 15, Ex. 3), claim 1 of U.S. Patent 7,870,225 ("the '225 patent," D.I. 15, Ex. 6) and claim 1 of U.S. Patent 8,694,590 ("the '590 patent," D.I. 15, Ex. 9) (hereafter, the "Asserted Claims" of the "Patents-in-Suit") all fail the two-step test for patent-eligibility set forth by the Supreme Court in *Alice Corp. Pty. Ltd. v. CLS Bank International* and are, therefore, ineligible for patenting under 35 U.S.C. §101. Further, those claims are representative of the remaining claims in their respective patents for purposes of the analysis under §101, which renders the remaining claims also ineligible for the same reasons.

Under step one of the *Alice* test, the claims of the Patents-in-Suit are directed to abstract ideas. The claims of the '526 and '254 patents purport to implement the basic idea of storing data to, or retrieving data from, a remote location, including transferring data from one remote location to another. Similarly, the claims of the '590 patent are directed to the abstract idea of receiving, reformatting and delivering a message. The Federal Circuit, however, has long established that these concepts of manipulating data are an abstract and age-old practice, long predating the advent of computers and the Internet. Merely implementing an abstract idea on a generic computer does not render the subject matter any less abstract.

The claims of the '225 patent are directed to the abstract idea of communicating instructions to a remote recipient in the same manner as if to a local recipient. None of the claims recite a specific implementation that improves any technological process of communicating instructions to the remote recipient. Instead, the claims are directed to the result or effect— communicating instructions in the same manner as if to a local recipient—that itself is the abstract idea.

RLF1 22554996v.1

Under step two of the *Alice* test, the claims of the Patents-in-Suit add nothing inventive to the underlying abstract ideas. The claims generically implement these abstract ideas using common computer components and functionality that the patents themselves admit were routine or conventional. In addition to reciting common computer components and functionality, the '225 patent merely claims a result, which itself is not inventive. Neither the patents nor Plaintiff SynKloud Technologies, LLC's ("SynKloud's") Amended Complaint for Patent Infringement ("Amended Complaint," D.I. 15) identifies any inventive technology for performing the recited steps or for building the claimed system.

Accordingly, Defendant HP Inc. ("HP") respectfully requests that the Court grant this motion on the basis that the Patents-in-Suit are patent-ineligible under §101.

## II.     NATURE AND STAGE OF PROCEEDINGS

On July 22, 2019, SynKloud filed a Complaint alleging infringement of "at least claim 1" of the '526 and '254 patents while reserving its right to assert additional claims. D.I. 1. In response, HP filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on the basis that the claims of the '526 and '254 patents are patent-ineligible under §101.

Rather than respond to HP's motion, SynKloud filed an Amended Complaint on November 12, 2019, which includes the original '526 and '254 allegations, and further asserting claim 1 of the '225 patent and claim 1 of the '590 patent. D.I. 15.

## III.     SUMMARY OF THE ARGUMENT

The Court should dismiss SynKloud's Amended Complaint with prejudice because the claims of the Patents-in-Suit are patent-ineligible under 35 U.S.C. §101.

1.     Claim 1 of the '526 patent and claim 1 of the '254 patent are directed to the pre-computer and pre-Internet abstract idea of storing data to, or retrieving data from, a remote location, including transferring data from one remote location to another.

2

2.      Claim 1 of the '590 patent is directed to the abstract idea of receiving, reformatting and delivering a message.

3.      Claim 1 of the '225 patent is directed to the abstract idea of communicating instructions to a remote recipient in the same manner as if to a local recipient.

4.      Those claims fail to recite any "inventive concept." Instead, they generically recite implementing those abstract ideas using computer components and functionality that the Patents-in-Suit admit were routine or conventional. Further, in the case of the '225 patent, the claims are directed to a result, which itself also is not inventive.

5.      Those claims are representative of the remaining claims in their respective patents for purposes of the analysis under §101, which renders the remaining claims also ineligible.

## IV.      STATEMENT OF FACTS

### A.      The '526 Patent

The '526 patent, titled "System and Method for Wireless Device Access to External Storage," proposes the idea that "the storage of a server can be used as the external storage for [a group of] wireless devices." *Id.*, 2:32-38. The patent itself describes the "invention" as focusing on nothing more than "how a wireless device can actually use external storage provided by a storage server." *Id.*, 1:23-24.

To retrieve data from external storage, "a user of the wireless device (1) can use [a web] browser to retrieve and play multimedia data file[s] such as video or music stored . . . on the [external storage] server" or "other software module[s] of the wireless device (1) also can retrieve [a] data file from the file system . . . on the server (3)." *Id.*, 5:31-41. No new technology is described for either option.

The components and processes recited in the claims comprise generic and conventional computer components and functions. For example, the '526 patent describes the "wireless device"

3

as a generic "cell phone or PDA." *Id*., 2:29-32. Likewise, the "Internal Storage of a System" comprises "hard disk drives, memory sticks, memory etc. [that] is connected to a system directly through bus or a few inches of cable." '526 patent, 1:31-33. The "External Storage of a System . . . could be magnetic hard disk drives, solid state disk[s], optical storage drives, [a] memory card, etc. and could be kept in any form such as Raid which usually consists of a group of hard disk drives." *Id*., 1:41-35; *see also id*., 3:42-45 ("[T]he storage connection media could be any kind of cables [and] [t]he storage system itself could be various types."). The '526 patent describes that the "web-browser . . . can be any suitable software, which is capable [of] communication with web server software [on a] web server through the HTTP protocol." *Id*., 3:27-30.

Claim 1 of the '526 patent—the only '526 patent claim identified in the Amended Complaint[1]—is recited below:

1.       A wireless device comprising:

at least one cache storage, one wireless interface, and program code configured to cause the wireless device to:

establish a wireless link for the wireless device access to a storage space of a predefined capacity assigned exclusively to a user of the wireless device by a storage server,

and couple with the storage server across the wireless link to carry out a requested operation for remote access to the assigned storage space in response to the user from the wireless device performed the operation,

wherein the operation for the remote access to the assigned storage space comprises storing a data object therein or retrieving a data object therefrom,

---

[1] "[A] district court is not required to individually address claims not asserted or identified by the non-moving party, so long as the court identifies a representative claim and 'all the claims are substantially similar and linked to the same abstract idea.'" *Broadsoft, Inc. v. Callwave Commc'ns, LLC*, 282 F. Supp. 3d 771, 777 (D. Del. Oct. 1, 2017) (quoting *Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1348 (Fed. Cir. 2014)). Here, the only claims thus far asserted, independent claim 1 of each of the '526, '254, '590 and '225 patents are representative. As discussed below, *see infra* at 7, 9-12 the remaining claims are substantially similar and linked to the same abstract idea.

> the storing of a data object including to download a file from a remote server across a network into the assigned storage space through utilizing download information for the file stored in said cache storage in response to the user from the wireless device performed the operation for downloading the file from the remote server into the assigned storage space.

As expressly recited, claim 1 is directed to a wireless device (1) with a wireless link for access to an assigned server storage space, (2) that can remotely store a data object in or retrieve a data object from the storage space, (3) which includes downloading data from a remote server into the storage space using download information from the wireless device's cache.

Independent claim 11 calls for a computer-readable medium with program code that performs the functionality recited in claim 1. Dependent claims 2-10 and 12-20 add nothing that matters. For example, claims 2 and 16 merely limit the data object to "comprise[] a message or multimedia data of video, digital music, or digital picture." Claims 3 and 20 make the user's dedicated device one of a plurality of storage devices. Claims 4 and 12 specify that download information transmitted to the storage server causes data download. Claims 5 and 19 limit the wireless device to "one of a cell phone or a person data and management device ('PDA')." Claims 6, 14 and 15 recite that data can be saved in folders or "folder structures." Claims 7, 8, 13 and 17 describe that folders and files can be deleted, moved, copied or renamed. Claims 9 and 18 describe access to the storage space using a web browser. Accordingly, claim 1 is representative of the remaining '526 patent claims. *Broadsoft*, 282 F. Supp. 3d at 777.

**B.     The '254 Patent**

The '254 patent, titled "System and Method for Wireless Device Access to External Storage," has a substantially similar specification as the '526 patent; both patents claim the same priority application. The '254 patent also purports to solve the same problem as the '526 patent, with effectively the same solution. *See* '254 patent, 1:21-23 ("This invention relates to wireless devices accessing and using external storage spaces provided by one or more servers."), 2:29-33

("Today, users commonly face a problem of lack of storage capacity configured on their wireless devices . . . ."), 2:33-39. The '254 patent recites the same steps for downloading data from a remote web server site into external storage (*id.*, 5:6-32) and the same steps for retrieving data from the external storage (*id.*, 5:33-43). Also, like the '526 patent, the '254 patent notes that it uses only generic and conventional computer components and functions. *Id.*, 2:30-32 (wireless devices are generic "cell phone or personal assistant devices ('PDA')", 1:29-33 (describing "internal storage of a computing system" as "those storage media such as hard disk drives, memory sticks, memory and others that are internally connected within the computing system"), 1:41-45 ("The storage media of the external storage could be magnetic hard disk drives, solid state disk[s], optical storage drives, memory card[s], or others . . . ."), 3:26-29 (describing the "web-browser" as any suitable software tool, which is capable [of] communication with web server software [on a] web server or with other web server[s] through the HTTP protocol.").

The Amended Complaint identifies one claim of the '254 patent, recited below:

1.     A wireless device accessing a remote storage space, the wireless device comprising:

at least one cache storage for caching data received from the Internet, and one computer-readable storage device comprising program instructions which, when executed by the wireless device, configure the wireless device accessing the remote storage space, wherein the program instructions comprise:

program instructions for the wireless device establishing a communication link for accessing the remote storage space served by a first server;

program instructions for the wireless device displaying the remote storage space upon receiving information of the remote storage space from the first server; and

program instructions for the wireless device coupling with the first server to carry out a requested operation for accessing the remote storage space in response to a user, through the remote storage space displayed on the wireless device, performing the operation,

wherein the operation being carried out for accessing the remote storage space comprises from the wireless device storing data therein or retrieving data therefrom,

the storing data comprising to download a file from a second server across a network into the remote storage space through utilizing information for the file cached in the cache storage in the wireless device.

As shown, '254 patent claim 1 is directed to a wireless device that (1) has a communication link for accessing a first server storage space, (2) can display the remote storage space, (3) couples with the first server to access the remote storage space to either store data or retrieve data and (4) includes downloading data from a remote server into the storage space using download information stored in the wireless device's cache.

Independent claims 9 and 16 respectively recite a server (claim 9) and a method (claim 16) that perform the same functionality recited in claim 1. Dependent claims 2-8, 10-15 and 17-20 also add nothing that matters here. For example, claim 5 makes the wireless device "one of a cell phone, or a personal data assistant." Claim 11 describes a second remotely accessible storage space. Claims 4, 12 and 18 merely describe displaying the remote storage space on a web browser. Claim 3 defines "download information" as file name and location. Claims 6, 7, 14, 19 and 20 describe the use of folders and that files and folders may be moved, copied, deleted or renamed. Claims 8 and 15 describe the types of files that may be stored or retrieved (*e.g.*, messages, videos, music or pictures). Claims 2, 10 and 17 recite that download information transmitted to the storage server causes the server to download a file. Accordingly, claim 1 is representative of the remaining claims of the '254 patent. *Broadsoft*, 282 F. Supp. 3d at 777.

C.      **The '590 Patent**

The '590 patent, titled "Method and System for Formatting Messages Into Stylized Messages for Print Out," describes methods for formatting emails using templates for delivery to a printer. '590 patent, Abstract; *see also id.*, 2:40-43 ("The messages are first transmitted by the user to the service 20, and then the service 20 formats the messages for delivery to the senior's printer 15."). According to the '590 patent, these templates can take any form. *See*, *e.g.*, *id.*, 3:58-

61 ("By way of a non-limiting example, the service 20 can provide a beach themed template, a holiday template, a masculine template, a feminine template, and the like."), 4:1-3 ("For the winter months, the template could include, for example a snow scene as a background."), 4:25-26 ("Other templates can be used such as to-do lists, address books, diaries, notepads, etc."). Further, the file history of the '590 patent describes that "formatting" comprises *any* method, without limitation, of placing components of the message into a template. *See*, *e.g.*, Declaration of Ketan V. Patel, Ex. A ('590 FH) at 11-12 ("The formatting in Applicants' system is accomplished by placing the elements of the email message into a selected template."); *Id.*, at 697 (stating, in the Examiner's Reason for Allowance, that "[t]he message [in Applicant's system] is formatted by placing elements of the message into a template e.g. themed template, where the template includes a title space and a text space.").

The computer components and processes recited are generic and conventional. For example, the '590 patent states that the claimed "system includes a printer 15, a central [formatting] service 20, and a network 30 that connects the printer 15 to the service 20." *Id.*, 2:22-24. The printer is described merely as a generic "ink-jet printer, a dye-sublimation printer, a laser printer, or the like" containing a "data modem network interface ('NIC') or some other means of communicating with the network 30." *Id.*, 2:24-28. The claimed "central service" serves only to "allow a user of the system such as [a] caregiver or senior [citizen] to configure settings [and] send messages and other information to the senior's printer." *Id.*, 2:36-40. The claimed "network" is described as a generic "Internet, DSL, a phone line, wireless WAN, or other means known in art." *Id.*, 1:31-33.

Claim 1 of the '590 patent—the only '590 patent claim identified in the Amended Complaint—recites:

1.     A method of delivering a message comprising:

receiving an email message directed to a preselected recipient at a central service, wherein the recipient is specified by an email address associated with the recipient, and wherein the email message comprises one or more elements;

resolving the elements of the email message into one or more categories of elements;

formatting the email message into a printer-friendly format for delivery of the message to the recipient's printer by placing the elements of the email message into a selected template, wherein the template comprises a plurality of spaces configured to receive a preselected category of elements and the template is selected based on the elements of the email message;

transmitting the formatted message to the recipient's printer over a network, wherein the recipient's printer comprises a printing device owned or possessed by the recipient; and

sending instructions to print the formatted message at the recipient's printer for direct receipt by the recipient.

As expressly recited, claim 1 a method for delivering a message comprising (1) receiving an email message with some elements at a central service, (2) resolving the elements into categories, (3) placing the elements into a template; (4) transmitting the message to a printer over a network; and (5) sending instructions to print the message.

Although the '590 patent has 74 dependent claims, none add functionality that would confer eligibility. Instead, the dependent claims merely describe different known templates (*see*, *e.g.*, claims 2 (template includes text and title), 3-12, 15-18, 20, 28 and 38-51), known types of formatting methods (*see*, *e.g.*, claims 2 (placing subject into title and body into text space), 3, 12, 14, 25-33 and 69-72), rules for selecting templates (*see*, *e.g.*, claims 19 (selecting a template if an element fits in a space and another if the element does not), 21-23, 25-28, 52-58 and 73-75), rules for identifying elements (24 (element is text which is retained if a certain font, color or code)), returning a response to the sender of an email (*see*, *e.g.*, claims 35-38), and storing and applying different user preferences and templates (*see*, *e.g.*, claims 59-68). The '590 patent does not claim

9

that any of those dependent elements are inventive. Accordingly, claim 1 is representative of the remaining claims of the '526 patent. *Broadsoft*, 282 F. Supp. 3d at 777.

### D.      The '225 Patent

The '225 patent, titled "Disk System Adapted to be Directly Attached to Network," claims to provide "a network-attached disk (NAD) system" that includes a network-attached storage device capable of receiving access commands from a host. '225 patent, 2:21-26. The patent acknowledges the benefit of a network-attached disk that can "be accessed like a local disk without the need of adding an additional file server or special equipment," and so claims a network-attached device accessed like a local device. *Id.*, 1:66-2:2, 2:21-26.

The '225 patent uses only generic and conventional computer components. For example, the '225 patent describes the network-attached storage device as containing conventional components (*e.g.*, a controller "for controlling the whole NAD device," memory, storage disks and a network adapter). *Id.*, 8:60-67. As an example of a network-attached device, the '225 patent describes "connect[ing] multiple [conventional] CD drives directly to a network." *Id.*, 22:55-61. The system further uses a generic network interface card to connect the network device to the host computer and a generic "bus" that electronically connects to devices. *Id.*, 3:35-41; 11:34-39.

Claim 1 of the '225 patent—the only '225 patent claim identified in the Amended Complaint—recites:

1.      A network-attached device (NAD) access system wherein a host, having an internal host system bus and running an operating system, controls an external device through a carrying general-purpose network traffic using a certain network protocol, the system comprising:

a network interface card (NIC) installed at the host for providing a general purpose network connection between the host and the network and via the network to other devices coupled to the network;

a network-attached device (NAD) having a data storage to store data, the NAD coupled to the network for receiving device level access commands from the host

in data link frames according to the certain network protocol through the network; and

a device driver, running at the host, for creating a virtual host bus adapter in software controlling the NAD through the network via the NIC, the device driver enumerating NAD that are available over the network, not directly attached to the host internal system bus, to make the host recognize the NAD as a host local device;

the virtual host bus adapter controlling the NAD in a way indistinguishable from the way as a physical host bus adapter device controls device so that the host recognizes the NAD as if it is a local device connected directly to the system bus of the host.

As expressly recited, claim 1 is a system for accessing a network-attached device (NAD) comprising generic components to achieve a desired result (emphasized as follows): (1) a host computer for controlling an external device; (2) a network interface card (NIC) for providing a generic network connection between the host and devices coupled to a network; (3) a device driver on the host for controlling the NAD through the network that makes the host recognize the NAD as a local device, (4) a virtual host bus adapter for controlling the NAD *in a way that is indistinguishable from* the way a physical adapter would control a local device.

Dependent claims 2-22 add nothing that would confer eligibility. For example, claims 2 and 3 specify known types of networks for connecting the NAD. Claim 4 specifies a conventional Ethernet card for the network interface. Claims 5 and 15 recite that the system operates on well-known UNIX or Windows operating systems. Claims 6, 11-12 and 14 describes conventional device driver operations and software for registering devices. Claims 7-9 describe well-known mechanisms for device-to-device communications. Claim 13 recites a system having multiple network-attached devices. Claim 16 further recites well-known features of the network-attached device (disk controller and network adapter). Claims 17-22 recite various conventional systems (*i.e.*, local disks, utilities to control disk access and/or allow automatic back-up). The '225 patent

11

does not claim that any of those dependent elements are inventive. Accordingly, claim 1 is representative of the remaining claims of the '225 patent. *Broadsoft*, 282 F. Supp. 3d at 777.

## V.      LEGAL STANDARDS

### A.      Rule 12(b)(6) Motions to Dismiss for Failure to State a Claim

Patentability under §101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Whether a claim recites patent-eligible subject matter under §101 is a question of law. *In re Roslin Inst. (Edinburgh)*, 750 F.3d 1333, 1335 (Fed. Cir. 2014) ("Section 101 patent eligibility is a question of law[.]"); *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012) (same). Accordingly, a district court may resolve the issue of patent eligibility under §101 at the pleading stage if the patent itself reveals that the asserted claims are not directed to eligible subject matter. *See*, *e.g.*, *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018); *Univ. of Fla. Research Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1367 (Fed. Cir. 2019) (affirming ineligibility ruling made on 12(b)(6) motion); *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017) (same); *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1341 (Fed. Cir. 2017) (affirming dismissal at pleading stage); *Content Extraction*, 776 F.3d at 1345; *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 713 (Fed. Cir. 2014).

### B.      Patent-Eligibility Under 35 U.S.C. §101

To be patent-eligible under §101, a patent claim must survive a two-part test. *Alice Corp.*, 134 S. Ct. at 2355. The first step requires determining whether the patent claim is directed to a patent-ineligible concept, such as an abstract idea. *Id*. If so, the second step requires determining whether the elements of the claim individually, or as an ordered combination, contain an "inventive concept" that transforms the nature of the claim into a patent-eligible application. *Id*. "It is well-settled that mere recitation of concrete, tangible components is insufficient to confer patent

eligibility to an otherwise abstract idea. Rather, the components must involve more than performance of '"well-understood, routine, conventional activit[ies]" previously known to the industry.'" *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016). Admissions in the patent specification that claim elements are well known, routine, and conventional are binding on the patentee for assessing patent eligibility. *See Automated Tracking Sols., LLC v. Coca-Cola Co.*, 723 F. App'x 989, 995 (Fed. Cir. 2018) (specification admissions that recited components were conventional led to affirming judgment on the pleadings on §101). Where a patent fails to claim a particular way of programming or designing a feature and "instead, merely claim[s] the resulting features," the Federal Circuit has ruled that such claims are directed to an abstract idea. *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1241 (Fed. Cir. 2016) (finding under *Alice* step one that "The patents claim systems including menus with particular features. They do not claim a particular way of programming or designing the software to create menus that have these features, but instead merely claim the resulting system."); *see also Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 2018-1863, 2019 WL 6041479, at *7 (Fed. Cir. Nov. 15, 2019) ("Absent sufficient recitation of *how* the purported invention improved the functionality of a computer, the "improvement" captured by those claims . . . amounted to a mere implementation of an abstract idea on a computer, not the specific way to improve the functionality of a computer.").

Claim construction is not a prerequisite to assessing §101 eligibility. Rather, patent-eligibility is a threshold issue that the Court may consider prior to construction. *See Bancorp Servs. v. Sun Life Assurance Co. of Can.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) (finding "no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under 101"). No formal claim construction is required where, as here, the claims disclose "no more than 'an abstract idea garnished with accessories'" and there is "no 'reasonable construction that would

bring them within patentable subject matter." *Ultramercial*, 772 F.3d at 719 (Mayer, J. concurring).

While preemption concerns underlie §101 jurisprudence, "questions on preemption are inherent in and resolved by the §101 analysis." *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015) ("Where a patent's claims are deemed only to disclose patent ineligible subject matter under the *Mayo* framework, . . . preemption concerns are fully addressed and made moot.").

## VI.   ARGUMENT

### A.   Alice Step One: The Claims At Issue Are Directed to Abstract Ideas

The first step of the *Alice* inquiry requires looking at the "focus" of the claims and their "character as a whole" to determine whether the claims are directed to an abstract idea. *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (internal quotations omitted); *Ultramercial*, 772 F.3d at 715 (holding claims directed to abstract idea where "the concept embodied by the majority of the limitations describes only the abstract idea").

#### 1.   The '526 and '254 Patents

Here, the "focus" and "character" of the claims of the '526 and '254 patents is directed to the abstract idea of storing data to, or retrieving data from, a remote location, including transferring data from one remote location to another. As described above in Section IV(A), the limitations of '526 patent claim 1 are directed to a wireless device that (1) establishes a wireless link with a remote storage server, (2) couples with the remote storage server, and (3) remotely accesses the storage space to either "stor[e] a data object therein or retriev[e] a data object therefrom." Similarly, the limitations of '254 patent claim 1 recite a wireless device that (1) is configured to access a remote storage space, (2) establishes a communication link for accessing the remote storage space, (3) displays the remote storage space, and (4) accesses the remote storage space to

14

"store[] data therein or retriev[e] data therefrom." Consequently, each claim is, in essence, a wireless device that couples/communicates with a remote storage server and stores or retrieves data from that server. Accordingly, the heart of both claims is storing data in or retrieving data from a remote location.

The Federal Circuit has long established that the mere storage and retrieval of information is an age-old, abstract concept. *Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1330 (Fed. Cir. 2017) ("[r]emotely accessing and retrieving user-specified information is an age-old practice that existed well before the advent of computers and the Internet"); *Pres. Wellness Techs. LLC v. Allscripts Healthcare Sols.*, No. 2:15-CV-1559-WCB, 2016 WL 2742379, at *7 (E.D. Tex. May 10, 2016), *aff'd sub nom. Pres. Wellness Techs. LLC v. Allscripts Healthcare Sols. Inc.*, 684 F. App'x 970 (Fed. Cir. 2017) (holding the "concept of record access and management" is an abstract idea).

Rather than providing an improvement in computer technology, the claims of the '526 and '254 patents merely use computers to automate basic human steps. *See University of Fla. Research Found.*, 916 F.3d at 1367; *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1092-93 (Fed. Cir. 2016). The abstract idea of the '526 and '254 patent claims is no different from, for example, Person A requesting that Person B obtain some desired information (*e.g.*, books, newspapers, documents, pictures, CDs, DVDs) and place them in a remote location allocated for Person A (*e.g.*, Person A's home, office, file cabinet, etc.). As another example, the claimed abstract idea is comparable to a student submitting a list of books identified from the Internet to a librarian for collection, storage and retrieval:

| '526 Patent, Claim 1 | '254 Patent, Claim 1 | |
|---|---|---|
| A wireless device comprising: | A wireless device accessing a remote storage space, the wireless device comprising: | A student who: |

15

| | | |
|---|---|---|
| at least one cache storage, one wireless interface, and program code configured to cause the wireless device to: | at least one cache storage for caching data received from the Internet, and one computer-readable storage device comprising program instructions which, when executed by the wireless device, configure the wireless device accessing the remote storage space, wherein the program instructions comprise: | obtains a list of the titles of books he/she requires; |
| establish a wireless link for the wireless device access to a storage space of a predefined capacity assigned exclusively to a user of the wireless device by a storage server, | program instructions for the wireless device establishing a communication link for accessing the remote storage space served by a first server;<br><br>program instructions for the wireless device displaying the remote storage space upon receiving information of the remote storage space from the first server; and | goes to or calls a library to request the books where the library has an assigned shelf for patrons to retrieve requested books; |
| and couple with the storage server across the wireless link to carry out a requested operation for remote access to the assigned storage space in response to the user from the wireless device performed the operation, | program instructions for the wireless device coupling with the first server to carry out a requested operation for accessing the remote storage space in response to a user, through the remote storage space displayed on the wireless device, performing the operation, | provides a librarian with the list of books; |
| wherein the operation for the remote access to the assigned storage space comprises storing a data object therein or retrieving a data object therefrom, | wherein the operation being carried out for accessing the remote storage space comprises from the wireless device storing data therein or retrieving data therefrom, | and requests that the librarian obtain those books and place them on the assigned shelf for later retrieval by the student; |

| | | |
|---|---|---|
| the storing of a data object including to download a file from a remote server across a network into the assigned storage space through utilizing download information for the file stored in said cache storage in response to the user from the wireless device performed the operation for downloading the file from the remote server into the assigned storage space. | the storing data comprising to download a file from a second server across a network into the remote storage space through utilizing information for the file cached in the cache storage in the wireless device. | And when the library does not have a requested book on the student's list, the librarian contacts another library and arranges for that book to be delivered to the library and placed on the assigned shelf designated for retrieval by the student. |

Reciting tangible components does not make the claims any less abstract where the Patents-in-Suit "make[] clear that the recited physical components merely provide a generic environment in which to carry out the abstract idea." *In re TLI*, 823 F.3d at 611; *see infra* Section VI(B) (demonstrating that all of the elements of the claims at issue are generic computer components and functions). The claims here use generic technology and do not recite "specific asserted improvements in computer capabilities." *Enfish, LLC v. Microsoft Corp.*¸ 822 F.3d 1327, 1337 (Fed. Cir. 2016). Claiming "wireless devices" operating over a communication network also does not make the idea nonabstract. *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1366 (Fed. Cir. 2015) ("An abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment, such as the Internet.").

Further, the claims at issue do not claim to provide any type of innovation rooted in computer technology or for resolving a particular computer-centric problem. *Compare DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014) (describing the "Internet-centric problem" of websites that would redirect users to another website and finding that the asserted patents recited a specific solution). Unlike *DDR Holdings*, where the claims were "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks," (*id.*) the '526 and '254 patents describe no more than the basic

idea of remotely storing information using generic and conventional computer components. '254 patent, 1:21-23 ("This invention related to wireless devices accessing and using external storage spaces provided by one or more servers."); *see also* '526 patent, 1:23-24 ("This invention focuses on how a wireless device can actually use external storage provided by a storage server."); *see, e.g., Erie Indem. Co.*, 850 F.3d at 1330 ("[r]emotely accessing and retrieving user-specified information is an age-old practice that existed well before the advent of computers and the Internet"). The '526 and '254 patent claims describe nothing more than basic storage and retrieval processes using generic computer functionality.

2. The '590 Patent

The focus of the '590 patent claims is directed to the abstract idea of receiving, reformatting and delivering a message. As described above in Section IV(C), the claims of the '590 patent are methods for delivering messages comprising (1) receiving an email with one or more elements at a central service, (2) resolving the elements into categories, (3) formatting the message by placing the elements into a template; (4) transmitting the message to a printer; and (5) sending instructions to print the message. In essence, the '590 patent describes the process of receiving a message, identifying certain elements in that message, reorganizing those elements into a specific format, and transmitting the reorganized message to another device.

The Federal Circuit has consistently rejected claims that recite manipulating or reorganizing data. *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014) (finding claims unpatentable and directed to an abstract idea where they recited "taking existing information . . . and organizing this information into a new form"); *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1340 (Fed. Cir. 2017) (asserted claims were "at their core, directed to the abstract idea of collecting, displaying, and manipulating data"); *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016) (finding claim

"merely presenting the results of abstract processes of collecting and analyzing information, without more" and "not [claiming] any particular assertedly inventive technology for performing those functions" to be abstract); *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1345 (Fed. Cir. 2018) ("collection, organization, and display of two sets of information on a generic display device is abstract absent a "specific improvement to the way computers [or other technologies] operate."); *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017) (finding claims "whereby a user displays images on a first display, assigns image codes to the images through an interface using a mathematical formula, and then reproduces the image based on the codes" directed to an abstract idea); *Content Extraction*, 776 F.3d at 1347 (finding that "(1) collecting data, (2) recognizing certain data within the collected data set, and (3) storing that recognized data in a memory" was an abstract idea because "data collection, recognition, and storage is undisputedly well-known" and "humans have always performed these functions").

Humans have long been capable of sorting and reorganizing data, and using a computer to automate this concept is abstract. *Blackbird Tech LLC v. Adv. Discovery Inc.*, Case 16-cv-413-GMS, 2017 WL 2734725, at *4 (D. Del. June 26, 2017). Here, the patent describes three components, a printer, a "central service," and a network that connects the printer to the service. '590 patent, 2:21-23. Each of the claimed steps of claim 1 is performed by the "central service" that serves as an automated service for (1) receiving an email message; (2) resolving the elements of the email message into categories; (3) formatting the email message into a selected template; and (4) transmitting the formatted message to a printer. '225 patent, claim 1. While a computer may expedite this process of receiving, reformatting and delivering a message, that does not make the idea patent eligible. *See*, *e.g.*, *Capital One Bank*, 792 F.3d at 1370 ("[O]ur precedent is clear

that merely adding computer functionality to increase the speed or efficiency of the process does not confer patent eligibility on an otherwise abstract idea.").

3.    The '225 Patent

As recited above, claim 1 of the '225 patent recites a system comprising (1) a host computer for controlling an external device; (2) a network interface card (NIC) for providing a general network connection between the host and network devices; (3) a device driver on the host for controlling the NAD so that the host recognize the NAD as a local device, (4) a virtual host bus adapter for controlling the NAD in a way that is indistinguishable from the way a physical host bus adapter would control a local device. The claim is thus directed to the abstract idea of communicating instructions to a remote recipient in the same manner as if to a local recipient. *See*, *e.g.*, *Koninklijke*, 2019 WL 6041479, at *7 ("Absent sufficient recitation of *how* the purported invention improved the functionality of a computer, the "improvement" captured by those claims . . . amounted to a mere implementation of an abstract idea on a computer, not the specific way to improve the functionality of a computer.").

The claims of the '225 patent do not recite any specific implementation for controlling the remote device through the network. Instead, they recite basic steps in terms of desired results without specifying how to achieve them. For example, the claims discuss a "virtual host bus adapter [for] controlling the NAD . . . as if it is a local device connected directly to the system bus of the host." *See*, *e.g.*, '225 patent, claim 1. However, the claims do not recite any specific way for the virtual host bus adapter to control the NAD such that it is indistinguishable from the way a local device is controlled, and seek to claim every way to achieve the desired result. *See Ameranth*, *Inc.*, 842 F.3d at 1241 (finding claims that "do not claim a particular way of programming or designing [recited functions] but instead merely claim the resulting systems" directed to an abstract idea); *Koninklijke*, 2019 WL 6041479, at *7 ("Absent sufficient recitation of *how* the purported

invention improved the functionality of a computer, the "improvement" captured by those claims . . . amounted to a mere implementation of an abstract idea on a computer, not the specific way to improve the functionality of a computer."). *Intellectual Ventures I LLC v. Symantec Corp.*, 234 F. Supp. 3d 601, 608 (D. Del. 2017) (finding claims unpatentable where they "d[id] not provide any concrete details that limit the claimed invention to a specific solution" and "simply rel[ied] on functional language").

Thus, the claims recite no more than the abstract idea of communicating instructions to a remote recipient as if to a local recipient. They merely describe a desired result using a conventional system—rather than a specific implementation—analogous to long-standing human activity. For example, the system of claim 1 of the '225 patent maps to a supervisor transmitting a document of instructions via inter-office mail to an employee as follows:

| '225 Patent, Claim 1 | |
|---|---|
| A network-attached device (NAD) access system wherein a host, having an internal host system bus and running an operating system, controls an external device through a carrying general-purpose network traffic using a certain network protocol, the system comprising: | An inter-office mail system wherein a supervisor can instruct an employee to perform a request: |
| a network interface card (NIC) installed at the host for providing a general purpose network connection between the host and the network and via the network to other devices coupled to the network; | an inter-office mailbox that allows the supervisor to pouch instructional documents to employees located in either local or remote offices; |
| a network-attached device (NAD) having a data storage to store data, the NAD coupled to the network for receiving device level access commands from the host in data link frames according to the certain network protocol through the network; and | an employee in a remote office who can receive instructional documents via the inter-office mail system from his/her supervisor; |

21

| | |
|---|---|
| a device driver, running at the host, for creating a virtual host bus adapter in software controlling the NAD through the network via the NIC, the device driver enumerating NAD that are available over the network, not directly attached to the host internal system bus, to make the host recognize the NAD as a host local device; | the supervisor having an inter-office envelope that lists employees in both local and remote offices who are capable of receiving inter-office mail on its cover without identifying the offices in which the employees are located, |
| the virtual host bus adapter controlling the NAD in a way indistinguishable from the way as a physical host bus adapter device controls device so that the host recognizes the NAD as if it is a local device connected directly to the system bus of the host. | the inter-office mail system allowing the supervisor to send instructional documents to an employee in a remote office in the same manner as sending to an employee in a local office. |

That the system maps directly to a pen-and-paper example adds support that the claims are directed to an abstract idea—communicating instructions to a remote recipient in the same manner as if to a local recipient—and not to any a technological application of the idea.

### B.    Alice Step Two: The Claims Lack an Inventive Concept

The second step of the *Alice* inquiry requires determining whether the limitations of the claims at issue, individually or as an ordered combination, add an "inventive concept" to "transform" the claimed abstract idea into patent-eligible subject matter. *Alice*, 134 S. Ct. at 2357 (internal citations omitted). There is no such "inventive concept" here. Instead, the claims merely recite generic computer components and conventional activities for implementing the abstract ideas.[2] The Patents-in-Suit amount to nothing more that "[s]tating an abstract idea while adding the words 'apply it with a computer,'" which is insufficient to confer patent eligibility. *Alice*, 134

---

[2] Where the specification admits that such claim elements were conventional, that is binding. *Automated Tracking*, 723 F. App'x at 995; *see also Univ. of Fla. Research Found.*, 916 F.3d at 1367. Here, the specifications admit that the elements of the claims at issue were well known, routine, and conventional and nothing in the specification nor SynKloud's Amended Complaint contradicts that conclusion. *Id.* (no factual dispute where specification indicated claimed components are conventional and complaint had no allegations that any claimed components were anything but conventional).

22

S. Ct. at 2358; *see also Capital One Bank*, 792 F.3d at 1371 ("Requiring the use of a 'software' 'brain' 'tasked with tailoring information and providing it to the user' provides no additional limitation beyond applying an abstract idea, restricted to the Internet, on a generic computer."); *OpenTV, Inc. v. Apple, Inc.*, No. 14-cv-01622-HSG, 2015 WL 1535328, at *4 (N.D. Cal. Apr. 6, 2015) ("The problem of how to transmit, receive, store, and organize [information] is not a creature of the Internet age: solutions to this problem date back to the invention of smoke signals.").

> 1.   The Claims of the '526 and '254 Patents Recite Only Generic Components Performing Conventional Functions

There is nothing inventive in either representative claim 1 of the '526 patent or of the '254 patent. Nowhere does the patent describe how the recited components advance over the prior art. The patent merely claims the basic concept of storing files remotely on a server. Indeed, the claimed components—"a wireless device," "program code," "cache storage," "storage server," "wireless link," "remote server," and "network"—are all generic computer components that the '526 patent admits (and courts have held) are conventional:

**Wireless Devices**. The '526 and '254 patents explain that the claimed "wireless device" is not new or improved but rather, any generic "cell phone or personal assistant device (PDA)." '526 patent, Abstract; '254 patent, Abstract. Courts in this District have found that use of a wireless device is not an inventive concept. *See*, *e.g.*, *Sound View Innovations, LLC v. Facebook, Inc.*, 204 F. Supp. 3d 655, 663 (D. Del. 2016) (finding that advertisements delivered to a specific wireless device "were not inventive concepts sufficient to confer patent eligibility").

**Internal and External Storage Spaces**. The '526 and '254 patents explain that the internal and external storage spaces (*e.g.*, "cache storage," "storage server," etc.) are comprised of generic components such as "hard disk drives, memory sticks, memory etc."('526 patent, 1:31-33; '254 patent, 1:29-31) or "magnetic hard disk drives, solid state disk[s], optical storage drives, memory

card[s], etc." ('526 patent, 1:41-35; '254 patent, 1:41-43). However, the use of a generic server with generic components is not inventive. *See*, *e.g.*, *Network Architecture Innovations LLC v. CC Network Inc.*, No. 2 :16-cv-914-JRG, 2017 WL 1398276, at *6 (E.D. Tex. Apr. 18, 2017) (claimed "bulletin server" does not provide inventive concept where patent does not claim a new type of server); *Symantec*, 234 F. Supp. 3d at 608 (finding claims ineligible where "[t]he specification confirms that the individual components, such as a 'network server,' 'nonvolatile data buffer,' and 'communication link,' are conventional, generic, and operate as expected.").

**Networks**. Similarly, the claimed "wireless link" or "communication link," described as a "network interconnecting a wireless device and a server" such as "the Internet" or an "Intranet" is also a purely generic computer component. '526 patent, 2:64-3:6; '254 patent, 2:67-3:2. Courts have routinely determined that the use of a computer network does not confer eligibility. *See*, *e.g.*, *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive."); *Capital One Fin. Corp.*, 850 F.3d at 1368 ("communication medium" is a "generic computer element[]"); *Ultramercial*, 772 F.3d at 716 ("[T]he use of the Internet is not sufficient to save otherwise abstract claims from ineligibility under §101."); *Symantec Corp.*, 234 F. Supp. 3d at 608.

**Program Code/Instructions**. The use of "program code configured to cause the wireless device to" perform generic steps is also insufficient to recite an inventive concept. *See*, *e.g.*, *IpLearn, LLC v. K12 Inc.*, 76 F. Supp. 3d 525, 535 (D. Del. 2014) (finding that the use of "computers, networks, the Internet, or computer program code" was generic and insufficient for eligibility); *TS Patents LLC v. Yahoo! Inc.*, 279 F. Supp. 3d 968, 972-73 (N.D. Cal. 2017) (find that use of "program code" was insufficient to recite an inventive concept).

24

For both the '526 and '254 patents, the functions performed by these generic computer components—storing, displaying, and retrieving content—are among the most routine functions of generic computers. *See Mortgage Grader, Inc. v. First Choice Loan Servs.*, 811 F.3d 1318, 1324-25 (Fed. Cir. 2016) (no inventive concept in claims reciting "stor[ing]" and "display[ing]" data); *Interval Licensing LLC v. AOL, Inc.*, No. 2016-2502, 2018 WL 3485608, at *9 (Fed. Cir. July 20, 2018) ("Offering a user the ability to select information to be displayed is one of the 'most basic functions of a computer.' . . . [Plaintiff] does not, and cannot, contend that it is arguably inventive to enable a person to access information over a network through a user interface."); *In re TLI*, 823 F.3d at 612 (stating that servers merely "storing, receiving, and extracting data" were routine computer functions as of 1997).

### 2. The Claims of the '590 Patent Recite Only Generic Components Performing Conventional Functions

As with the '526 and '254 patents, there is nothing inventive in representative claim 1 of the '590 patent. Indeed, the claimed components—"email," "printer," "central service," "elements," "templates," and "network"—are all generic computer or software components that the '590 patent admits (and courts have held) are conventional.

The '590 patent claims that while "[c]urrent systems exist for the transmission of photographs to users without a computer or to users who are unable to sufficiently operate a computer . . . these systems are not able to receive email messages that are formatted into selected templates." '590 patent, 1:30-35. Even if that is true, receiving data via email and reorganizing that data for delivery is an age-old concept and insufficient to impart an inventive concept. *See, e.g.*, *buySAFE*, 765 F.3d at 1355 (Fed. Cir. 2014) ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive."); *Capital One Fin. Corp.*, 850 F.3d at 1368; *Ultramercial*, 772 F.3d at 716; *Symantec Corp.*, 234 F.

Supp. 3d at 608; *Gammino v. Am. Tel. & Tel. Co.*, 127 F. Supp. 3d 264, 273 (D. Del. 2015) (noting that "[t]he Supreme Court and Federal Circuit have held that there is no 'inventive concept' if a claim recites an abstract idea implemented using 'generic' technology"). The patent merely claims the basic concept of receiving, reformatting and delivering a message.

The '590 patent describes the claimed printer as a generic "ink-jet printer, a dye-sublimation printer, a laser printer, or the like" containing a "data modem network interface ('NIC') or some other means of communicating with the network 30." *Id.*, 2:24-28. Likewise, the patent describes the claimed "central service" only as "allow[ing] a user of the system . . . to configure settings [and] send messages and other information to the senior's printer." *Id.*, 2:36-40. The patent does not even attempt to characterize those elements as inventive.

The claim's recitation of "elements of the email message" and "templates" is likewise insufficient. The patent describes "templates" as including "themed templates, calendars, to-do lists, address books, stationary, and the like." '590 patent, Abstract. The claimed "elements of the email message" are nothing more than the component parts of generic emails. *Id.* ("[t]he system and methods format the email message by parsing the elements of the message into component parts"). There is nothing novel or inventive about identifying data characteristics and changing that data into a different form. *See Recognicorp*, 855 F.3d at 1328 ("[C]laim 1 is directed to the abstract idea of encoding and decoding. The addition of a mathematical equation that simply changes the data into other forms of data cannot save it."); *Elec. Power Grp.*, 830 F.3d at 1355 (no inventive concept in claims directed to "selecting information, by content or source, for collection, analysis, and display").

3.    <u>The Claims of the '225 Patent Do Not Recite an Inventive Concept</u>

Like the claims of the '526, '254 patents and '590 patents, the '225 patent claims recite only components that are generic and used in a conventional manner:

26

**Host, having an internal host system bus and running an operating system**. The '225 specification makes clear that the "host" is merely a generic computer having an internal bus and running an operating system. *See* '225 patent, 2:27-28 ("The host may run the UNIX or Windows family of operating systems."); 3:31-33 ("A host 100 has a file system 101, which may contain a local disk device driver 102 that controls a local disk 104 connected to an internal system bus 103."); 11:34-39 ("In the Windows 2000 operating system, the generic term, 'bus', refers to a piece of hardware to which devices connect electronically. Not only does it include things like the PCI bus, but it also includes anything that can have multiple devices plugged into it such as a SCSI adapter, a parallel port, a serial port, a USB hub, and so on."). *See, e.g.*, *IpLearn*, 76 F. Supp. 3d at 535 (finding that the use of "computers, networks, the Internet, or computer program code" was generic and insufficient for eligibility).

**Network Interface Card ("NIC")**. Similarly, the network interface card does not limit the '255 patent to an inventive concept as a network interface card is a generic component. As claim 1 states, a "network interface card . . . provid[es] a general purpose network connection between the host and the next." '225 patent, claim 1.

**Network-attached device and local devices**. As with the '526 and '254 patents, the recitation of local and external/network storage devices is not inventive as these devices are generic components. '225 patent, 3:33-43 ("[L]ocal device is defined as a device inside a standard-alone system as opposed to a network device connected to a network . . . The local disk 104 may be a conventional IDE (Integrated Drive Electronics) disk or SCSI (Small Computer System Interface) disk."), 22:55-58 ("The kinds of storage devices that can be directly connected to a network using the interface of the present system are not limited to disk systems. Tape systems and CD drives

use IDE or SCSI interface, the same bus interface as disk systems."). *See*, *e.g.*, *Network Architecture Innovations*, 2017 WL 1398276, at *6; *Symantec Corp.*, 234 F. Supp. 3d at 608.

**Device driver . . . for creating a virtual host bus adapter . . . to make the host recognize the NAD as a host local device**. The '225 patent claims that "[t]he major feature of the present invention is to replace the conventional bus driver and the port driver with a new bus driver and a new port driver so that the NAD devices can be recognized as the same as the local disks and the disk I/O operations can be performed to the NAD devices through the network port of the Windows 2000 host." '225 patent, 11:48-53. Although the patent states that the alleged inventive concept is replacing a conventional bus driver with a virtual driver so NAD devices can be recognized as the same as local disks, the claims fail to provide any information or limitation about how this is done. *See* '225 patent, claim 1 ("the virtual host bus adapter controller the NAD in a way indistinguishable from the way [a] physical host bus adapter device controls device[s]."). "Absent sufficient recitation of *how* the purported invention improved the functionality of a computer, the "improvement" captured by those claims . . . amounted to a mere implementation of an abstract idea on a computer, not the specific way to improve the functionality of a computer." *Koninklijke*, 2019 WL 6041479, at *7.

    4.    The Ordered Combination of the Elements Also Lacks Inventive Concept

The claims' ordered combination of the elements also fails to provide any inventive concept. The claims rely on "generic computer components used in a routine arrangement." *Uniloc USA, Inc. v. AVG Techs. USA, Inc.*, C.A. No. 2:16-cv-00393-RWS, 2017 WL 1154927, at *8 (E.D. Tex. Mar. 28, 2017). For example, the '526 and '254 patents admit that the claims do not require any inventive device or network architecture and can instead be implemented on any "cell phone[] or personal data assistant" ('526 patent, 2:29-32) using any kind of "hard disk drive, memory stick[], memory[,] solid state disk, optical storage drive[], memory and others and could be in any

form" (*id.*, 1:31-44). The '590 and '225 patents similarly rely on "generic computer components used in a routine arrangement."

Thus, rather than require a "non-conventional and non-generic arrangement of known, conventional pieces" (*BASCOM Glob. Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016)), the claims here merely call for the traditional arrangement of generic computer components. They "add nothing . . . that is not already present when the steps are considered separately." *Alice*, 134 S. Ct. at 2359 (internal quotations omitted). Accordingly, the ordered combination of the limitations of the claims at issue fails to provide the required inventive concept. *Elec. Power Grp.*, 830 F.3d at 1355.

### C.     SynKloud's Claims are Unduly Preemptive

Preemption is an "underlying functional concern," asking "how much future innovation is foreclosed relative to the contribution of the inventor." *Mayo*, 566 US at 88. Total preemption is not required for patent ineligibility. *See Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015) ("While preemption may signal patent ineligible subject matter, the absence of complete preemption does not demonstrate patent eligibility.").

SynKloud's claims attempt to foreclose future innovation by monopolizing the abstract ideas discussed above. As described, the claims impose no technical limitations and instead include all technology under the umbrellas of "wireless devices," "servers," "formatting . . . email message[s]," and "device driver[s] . . . to make the host recognize [network devices] as a host local device." *See, e.g.*, '526 patent, claim 1; '254 patent, claim 1, '590 patent, claim 1, '225 patent, claim 1. Absent specific technical limits, the claims reduce to methods and systems for implementing abstract ideas using generic and conventional computer components. Without disclosing a specific technological solution worthy of patent protection, the patents unduly preempt a wide range of future innovation, confirming their ineligibility under §101.

29

## VII.    CONCLUSION

Because the claims of the '526 patent,'254 patent,'590 patent and '225 patent are directed to abstracts idea and lack any inventive concept, HP respectfully requests that the Court grant its Motion to Dismiss Plaintiff's Amended Complaint on the grounds that the Patents-in-Suit are patent-ineligible under 35 U.S.C. §101.

_____ */s/ Kelly E. Farnan* _____

Kelly E. Farnan (#4395)
Farnan@rlf.com
Travis S. Hunter (#5350)
Hunter@rlf.com
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
302-651-7700

OF COUNSEL:

Richard A. Cederoth
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
(312) 853-7000

Ching-Lee Fukuda
Ketan V. Patel
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
(212) 839-5300

*Attorneys for Defendant HP. Inc.*

December 6, 2019

RLF1 22554996v.1