IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SYNKLOUD TECHNOLOGIES, LLC,<br><br>                    Plaintiff,<br><br>       v.<br><br>HP, INC.,<br><br>                    Defendant. | Civil Action No. 19-1360-RGA<br>(consolidated) |
| MICROSOFT CORPORATION,<br><br>                    Plaintiff,<br><br>       v.<br><br>SYNKLOUD TECHNOLOGIES, LLC,<br><br>                    Defendant. | Civil Action No. 20-0007-RGA |

<u>MEMORANDUM ORDER</u>

Before the Court is Microsoft Corporation's Motion to Dismiss SynKloud Technologies'

Counterclaims. (D.I. 52).[1]  The motion has been fully briefed. (D.I. 53, 58, 61).  For the reasons

set forth below, Microsoft's motion is **GRANTED**.

## I.   BACKGROUND

Microsoft and SynKloud are parties to Case No. 20-cv-00007-RGA, which was

consolidated with *SynKloud Technologies, LLC v. HP Inc.,* No. 19-1360-RGA.  In the *HP* case, I

---

[1] All citations are to Docket No. 19-1360 unless otherwise noted.

1

concluded that claims 1-10 of U.S. Patent No. 9,098,526 (the '526 Patent) and claims 1-8 of U.S. Patent No. 10,015,254 (the '254 Patent) were invalid for claiming patent-ineligible subject matter. (D.I. 31 at 34-35). I did not reach the remaining claims of the '526 and '254 Patents because only independent claim 1 of each patent had been asserted against HP. (*Id.* at 10 n.4).

Just before the § 101 order was filed in the *HP* action, SynKloud filed an Answer in the *Microsoft* case including counterclaims of infringement. (D.I. 33 ¶¶ 1-47).[2] The counterclaims allege indirect infringement of all claims of the '526 and '254 Patents. (*Id.* ¶¶ 22, 33). Subsequently, Microsoft moved for a judgment on the pleadings of invalidity for all claims of the asserted patents. (D.I. 52). SynKloud conceded that claims 16-20 of the '254 Patent would be invalid in light of the Court's prior analysis[3] but argued that the Court's previous opinion does not extend to claims 11-20 of the '526 Patent and claims 9-15 of the '254 Patent, which, SynKloud asserts, do not rise and fall with the claims addressed the *HP* case, and are patentable under 35 U.S.C. §101. (D.I. 58 at 1).

Independent claim 11 of the '526 Patent recites:

A non-transitory computer-readable medium comprising program code that, being executed by a wireless device, causes the wireless device to:
   establish a wireless link for the wireless device access to a storage space of
      predefined capacity assigned exclusively by a storage server to a user of the
      wireless device;
   couple with the storage server through the wireless link to carry out a requested
      operation for remote access to the assigned storage space in response to the user
      from the wireless device performing the operation;
   wherein the operation for the remote access to the assigned storage space comprises
      storing a data object therein or retrieving a data object therefrom, the storing of
      the data object including to download a file from a remote server across a network
      into the assigned storage space through utilizing download information for the file
      stored in a cache storage of the wireless device in response to the user from the

---

[2] Counterclaims begin on page 9. (No. 20-7-RGA, D.I. 33).

[3] SynKloud reserves its right to appeal. (D.I. 58 at 1).

wireless device performing the operation for downloading the file from the
remote server into the assigned storage space.

Independent claim 9 of the '254 Patent recites:

> A server for delivering storage service, comprising:
>> a plurality of storage spaces residing among a plurality of storage devices; and
>> a computer-readable storage device comprising program instructions that, when
>> executed by the server, configure the server to control delivering the storage
>> service; wherein the program instructions comprise:
>> program instructions for the server establishing a communication link for the first
>> wireless device remotely access a first one of the storage spaces;
>> program instructions for the server sending information of the first one of the storage
>> spaces to the first wireless device for causing display of the information on the
>> first wireless device; and
>> program instructions for the server updating the first one of the storage spaces
>> according to a requested operation received from the first wireless device upon a
>> user thereof, through the displayed information of the first one of the storage
>> spaces performing the operation for remotely accessing the first one of the storage
>> spaces,
>> wherein said operation for remotely accessing the first one of the storage spaces
>> comprises from the first wireless device storing data therein or retrieving data
>> therefrom, wherein the storing data further comprises program instructions for the
>> server downloading a file from a remote server across a network into the first one
>> of the storage spaces through utilizing information for the file cached in a cache
>> storage in the first wireless device.

## II.   LEGAL STANDARDS

A Rule 12(c) motion for judgment on the pleadings is reviewed under the same standard

as a Rule 12(b)(6) motion to dismiss when the Rule 12(c) motion alleges that the plaintiff failed

to state a claim upon which relief can be granted. *See Revell v. Port Auth.*, 598 F.3d 128, 134

(3d Cir. 2010); *Turbe v. Gov't of the Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991).  Like a

Rule 12(b)(6) motion, the court may not consider materials or evidence outside of the pleadings

when considering a Rule 12(c) motion. *Mele v. Fed. Res. Bank of N.Y.*, 359 F.3d 251, 257 (3d

Cir. 2004).  The court must accept the factual allegations in the complaint and take them in the

light most favorable to the non-moving party. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007);

*Christopher v. Harbury*, 536 U.S. 403, 406 (2002).  "When there are well-ple[d] factual

3

allegations, a court should assume their veracity and then determine whether they plausibly give

rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The court must

"draw on its judicial experience and common sense" to make the determination. *See id.*

Section 101 of the Patent Act defines patent-eligible subject matter. It provides:

"Whoever invents or discovers any new and useful process, machine, manufacture, or

composition of matter, or any new and useful improvement thereof, may obtain a patent therefor,

subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court

recognizes three categories of subject matter that are not eligible for patents—laws of nature,

natural phenomena, and abstract ideas. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216

(2014). The purpose of these exceptions is to protect the "basic tools of scientific and

technological work." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71

(2012). "[A] process is not unpatentable simply because it contains a law of nature or a

mathematical algorithm," as "an application of a law of nature or mathematical formula to a

known structure or process may well be deserving of patent protection." *Id.* (internal quotation

marks and emphasis omitted). In order "to transform an unpatentable law of nature into a patent-

eligible application of such a law, one must do more than simply state the law of nature while

adding the words 'apply it.'" *Id.* at 72 (emphasis omitted).

In *Alice*, the Supreme Court reaffirmed the framework laid out in *Mayo* "for

distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from

those that claim patent-eligible applications of those concepts." 573 U.S. at 217. First, the court

must determine whether the claims are drawn to a patent-ineligible concept. *Id.* If the answer is

yes, the court must look to "the elements of the claim both individually and as an ordered

combination" to see if there is an "inventive concept—*i.e.*, an element or combination of

4

elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* at 217-18 (cleaned up). "A claim that recites an abstract idea must include additional features to ensure that the claim is more than a drafting effort designed to monopolize the abstract idea." *Id.* at 221 (cleaned up). Further, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Id.* at 222 (alteration in original) (quoting *Bilski v. Kappos*, 561 U.S. 593, 610-11 (2010)). Thus, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* at 223.

## III.   DISCUSSION

### A. The '526 Patent

Microsoft argues that claims 11-20 of the '526 Patent are directed to the same abstract idea contained in independent claim 1, namely: "requesting an institution to obtain data from remote locations and to store that data in storage space assigned to a specific user." (D.I. 53 at 10 (citing D.I. 31 at 17)).

A comparison of invalidated claim 1 and claim 11 reveals very similar language. Claim 1 is directed to a wireless device that can (1) establish a wireless link to access a storage space; (2) store and/or retrieve data objects from the storage space; (3) including downloading a file from a remote server into the storage space using the file's download information found in the wireless device's cache storage. ('526 Patent 5:60-6:15). Claim 11 is directed to "non-transitory computer readable medium comprising program code" which causes the wireless device to (1) establish a wireless link to access a storage space; (2) store and/or retrieve data objects from the

storage space; (3) including downloading a file from a remote server into the storage space using the file's download information found in the wireless device's cache storage. (*Id.* at 6:58-7:10).

SynKloud offers several arguments as to why the Court's prior analysis should not control these facially similar claims.[4] A number of these arguments were considered and rejected in the Court's first order. For example, SynKloud argues that the asserted claims are not directed to an abstract concept because they contain the "novel concept of cache storage." (D.I. 58 at 4, 11). The term "cache storage" also appears in invalidated claim 1 and SynKloud argued that the term indicated that the claim was directed to a specific structure. (D.I. 31 at 14-15). SynKloud does not add more substance to its argument in the present briefing. (*See* D.I. 58 at 3-4). SynKloud also revives identical arguments with respect to the synchronous operation of communication devices and the use of a plurality of storage devices. (D.I. 58 at 12-14; *see also* D.I. 31 at 12, 21 (addressing these arguments)).

Claims 11-20 of the '526 Patent are not meaningfully distinct from those invalidated in the Court's previous opinion. The fact that independent claim 11 is directed to a "non-transitory computer-readable medium comprising a program code" rather than a "wireless device" does not change the analysis. *See Planet Bingo, LLC v. VKGS LLC*, 576 F. App'x 1005, 1009 (Fed. Cir. 2014) (finding claims ineligible where "the claims recite a program that is used for the generic functions of storing, retrieving, and verifying"); *see also Voip-Pal.Com, Inc. v. Apple Inc.*, 411 F. Supp. 3d 926, 947 (N.D. Cal. 2019) (describing a patent's claimed "non-transitory computer readable medium" as "simply a generic vessel for generic 'program code'").

_____

[4] SynKloud relies heavily on an Expert Declaration (D.I. 59) throughout its briefing. I may not consider matters outside the pleadings on a Rule 12(c) motion and will accordingly disregard the contents of the declaration. *See Intellectual Ventures I LLC v. T-Mobile USA, Inc.*, 2017 WL 3706495, at *7 (D. Del. Aug. 23, 2017), *aff'd*, 748 F. App'x 330 (Fed. Cir. 2019).

The dependent claims 12-20 are substantively identical to those that depend from claim 1 (2-10), and similarly add nothing inventive. (D.I. 31 at 20-22).

Accordingly, I find that the Court's previous analysis holds for the remaining claims of the '526 Patent.  Claims 11-20 of the '526 Patent are directed to the abstract concept of remotely accessing and storing data and the claimed limitations add nothing inventive to this abstract concept.

## B. The '254 Patent

Independent claim 9 of the '254 Patent recites a server with (1) a plurality of storage spaces; (2) a storage device with program instructions for (a) establishing a connection between a wireless device and a storage space; (b) sending information from the server to display on the wireless device; (c) updating the server following user action on the wireless device; and (d) storing data by downloading a file from a remote server into the storage space using the file's download information found in the wireless device's cache storage. ('254 Patent 6:63-7:23). Again, Microsoft argues that this claim is directed to the same abstract idea of "requesting an institution to obtain data from remote locations and to store that data in storage space assigned to a specific user." (D.I. 53 at 10).

SynKloud argues that the '254 Patent "improves the wireless device by expanding available local storage using an interactive display of the remote storage space that appears as local storage to the user." (D.I. 58 at 2).  SynKloud's description is not entirely supported by the claims or the specification, which describe allowing users to access and interact with external storage remotely from their wireless devices. (*See, e.g.*, '254 Patent 2:36-37).  I am not persuaded that facilitating access to remote storage via the user's web browser is the same as "an interactive display of the remote storage space that *appears as local storage* to the user." (D.I. 58

at 2) (emphasis added). The specification does not identify any specific technological improvements to the wireless device except supplementing local storage by using "the storage on a server . . .as the external storage for the wireless device[]." '254 Patent 2:36-37.

Federal Circuit precedent is clear: "Remotely accessing and retrieving user-specified information is an age-old practice that existed well before the advent of computers and the Internet." *Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1330 (Fed. Cir. 2017); *see also* (D.I. 31 at 11-12 (citing additional cases)). Additionally, implementing an abstract idea in a "generic technological environment," such as a generic server and wireless device, does not render the idea non-abstract. *Id.* SynKloud has not pointed to any portion of claim 9 that explains why the Court's prior analysis of the '254 Patent does not apply with equal force to these additional claims. (*See* D.I. 31 at 11-17 (*Alice* Step One analysis of the '254 Patent claim 1)). I agree with Microsoft's characterization of claim 9 as the server-side implementation of claim 1. (D.I. 53 at 11).

Proceeding to *Alice* step two, SynKloud cites two key features of the dependent claims that add inventive concepts. (D.I. 58 at 9-10). First, SynKloud highlights the "plurality of storage devices" limitation in dependent claim 13. (*Id.* at 10). A similar argument was considered and rejected in the context of the '526 Patent. (D.I. 31 at 21). SynKloud cites no support in the specification or other rationale to explain why the addition of more storage devices is inventive. (*See* D.I. 58 at 10).[5] Without more, claim 13 appears to only describe generic computer components (storage devices and servers) performing routine functions. *See, e.g., In re TLI Comm. LLC Patent Litig.*, 823 F.3d 607, 614 (Fed. Cir. 2016) (citing cases).

---

[5] SynKloud does cite to its expert declaration in support. The cited portions, however, appear to largely repeat the claim language. (*See* D.I. 58 at 10).

SynKloud also highlights the "display" feature which is recited in claim 9 and claim 12. (D.I. 58 at 10-11). SynKloud asserts that the display is specific and structured. (*Id.*). As the display limitation also appears in the previously invalidated claims, the same argument was addressed at length in the Court's previous opinion, and I will not repeat my analysis here. (D.I. 31 at 13-14). The only discernible display in the '254 Patent is a web-browser "or any suitable software tool." (*See* '254 Patent 3:26-27). Accessing and displaying the remote storage via a generic web-browser adds nothing inventive to the claims. *Intellectual Ventures*, 850 F.3d at 1330 (finding no inventive concept where "[t]he claimed mobile interface is so lacking in implementation details that it amounts to merely a generic component . . . that permits the performance of the abstract idea")

The remaining dependent claims similarly fail to satisfy *Alice* step two. Claim 10 recites "program instructions" for the server receiving file information stored in cache storage and requesting to download the file. (*Id.* at 7:26-30). Claim 11 recites the use of a second storage space on a second wireless device. (*Id.* at 7:31-35). Claim 14 recites the remote creation, manipulation, and deletion of folders in the storage spaces. (*Id.* at 7:47-53). Claim 15 recites remotely retrieving a message, video, picture, or music from the storage space. (*Id.* at 8:1-5). The specification contains no information indicating that the additional limitations in the dependent claims, alone or in combination, are anything other than routine computing functions implementing the abstract idea. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014) (noting that, "Adding routine additional steps . . . does not transform an otherwise abstract idea into patent-eligible subject matter").

As such, I find that claims 9-15 of the '254 Patent are directed to the abstract concept of remotely storing and retrieving data and that the recited limitations do not add an inventive concept.

## C.   Outstanding Claim Construction Disputes

SynKloud contends that the parties' claim construction disputes must be resolved prior to an eligibility determination. (D.I. 58 at 15).  In particular, SynKloud argues that the Court must construe (1) "cache;" (2) "the wireless device displaying the remote storage space;" and (3) "carry out the requested operation . . . through the remote storage space displayed on the wireless device." (*Id.* at 15-16).

There are two problems with SynKloud's argument: (1) in claim construction, SynKloud did not ask for any of these constructions; and (2) even if it had, it would not make any difference.

SynKloud made the "claim construction is required" argument in a brief filed January 7, 2021. (D.I. 58).  As it happens, a few months later, in May 2021, the parties filed the Joint Claim Construction Chart, which identifies the disputed terms for construction.  It identified exactly one term from each of the '526 and '254 patents for construction, and proposed that each be given its "plain and ordinary meaning." (D.I. 72 at 6).  The subsequent claim construction briefing is in accord with the Joint Claim Construction Chart. (D.I. 81).  So, the argument that claim construction was necessary for the identified terms was completely bogus.[6]

Even accepting SynKloud's proposed construction of cache storage ("high-speed access area in hardware or software memory of a computing device that temporarily stores data") does

---

[6]  If there are ever any "exceptional case" proceedings because Defendant becomes the prevailing party, Defendant should remind me about this.

not change the analysis. (D.I. 58 at 15).[7] The use of cache storage is not discussed in the '526 or

'254 Patent specifications except to reference "cached web-pages on the wireless device." '254

Patent 5:18; '526 Patent 5:15.  Simply including a specific function of a computer used to

implement the abstract idea does not provide "specific structure." *Cf. Amdocs (Israel) Ltd. v.*

*Openet Telecom, Inc.*, 841 F.3d 1288, 1301 (Fed. Cir. 2016) (finding specific structure when

"[the claim] is narrowly drawn . . . and does not merely combine the components in a generic

manner, but instead purposefully arranges the components in a distributed architecture to achieve

a technological solution to a technological problem"); *see also* (D.I. 31 at 14-15 (addressing the

"cache storage" argument)).

      SynKloud argues that the remaining two identified terms "require a non-conventional use

of display information." (D.I. 58 at 16).  SynKloud raised this identical construction – if this is

indeed its proposed construction – when disputing HP's motion to invalidate the '526 and '254

Patents. (*See* D.I. 31 at 13-14).  I have already addressed this argument and SynKloud offers no

reason why the same conclusion should not apply. (*See id.* at 14).

      None of the claim construction disputes identified in SynKloud's briefing impact the

preceding analysis. Where the Court can obtain a "full understanding of the basic character of the

claimed subject matter," the resolution of all claim construction disputes "is not an inviolable

prerequisite to a validity determination under § 101." *Bancorp Servs., LLC Sun Life Assurance*

*Co. of Canada (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012).

---

[7] Citing its expert declaration, SynKloud also argues that its use of cache storage is
unconventional. (D.I. 58 at 16). That is not an issue of claim construction.

**D. Leave to Amend**

SynKloud requests leave to amend, which Microsoft opposes. (D.I. 58 at 16; D.I. 61 at 10). While leave to amend is liberally granted, I find that it would be futile in this case where the parties have debated the substance of the specification and the claims, not the language of the pleadings. *F45 Training Pty Ltd. v. Body Fit Training USA Inc.*, 2021 WL 2779130, at *13 (denying leave to amend where the court examined "the claim limitations and the statements in the specification themselves, all of which are fixed and cannot be changed in litigation and cannot be pled around").

**IV.    CONCLUSION**

For the reasons set forth above, Microsoft's motion for a judgment on the pleadings under Rule 12(c) (D.I. 52) is **GRANTED**.

IT IS SO ORDERED this 12 day of August 2021.

_____
United States District Judge

12